We'll hear the motion first. Mr. Karloff, good morning again. Good morning again, your honors. May it please the court. I'm here on behalf of Stillwater Liquidating, which is the successor to 12 investment funds for purposes of this morning. Your honors, the district court denied these funds restitution without hearing or oral argument and its decision rests on significant errors. First, the court emphasized that the Jirova transfer and the transfer to Shaheeni were too far apart to be related, believing there was a two-year gap. And this is at page 17 of its opinion. And on this concludes they're too attenuated in time to be directly or approximately related, which is the standard. However, the court's wrong. The Jirova transfer was in January 2010. As the indictment pleads at paragraph 28, the Shaheeni conduct begins in, at latest, May of 2010. That's a four-month period, not a two-year period. And it's actually a shorter period of time than the five months between the Shaheeni conduct and the Taliaferri conduct that the court finds was related for restitution purposes. Second, the court erred in thinking that the funds received stuck. Does the indictment allege that Stillwater was fraudulently induced into contributing its assets to Jirova? It does not allege that, Your Honour. It alleges that the Jirova transfer was part of the scheme to defraud. It says at paragraph 13 that the scheme began in 2009, which is before the Jirova transfer. And then it says that the Jirova transfer took place, and it talks about that as the overview of the scheme to defraud. It then, under the heading of deception to ensure Jirova maintained its listing on the New York Stock Exchange, lists the Jirova transfer and the acquisition of Stillwater's assets as important. And then these allegations, and there's several more, are all included in all of the offences that's incorporated. More importantly, at the Hearst trial, the government repeatedly told the court that the Jirova transfer was a fundamental part of the conspiracy, and 100% part of the conspiracy, and repeatedly said things like that. And then, before the jury, in closing, at page 1591 of the transcript, said that the injury to Jirova for not getting any consideration for, I mean, to Stillwater, rather, for not getting any consideration was material. Was a material injury resulting from the offense conduct. So, the government itself put the injury to the funds central to its trial of Hearst. And then walks that back in restitution after originally taking the position that the funds were entitled to restitution. What, your honor, what the government did attempt to prove, and what is stated, is that the funds never received the stock they were promised. For example, page 146 of the transcript, which is at exhibit eight of our petition, the government asked Mr. Dewek, before the jury, did you actually receive the actual shares? And he answers unequivocally, no. And that testimony is repeated four times before the jury. Pages 114 and 15, page 119, page 124, and again, page 146. The court in its opinion makes an error in saying that these were stray comments that were made outside the jury. Again, neither of those were true. The government itself put these at the center of how it tried things. So it's in the indictment, and it's in the- There's no question that Stillwater's name is mentioned from time to time. How is it an abuse of discretion for the district court to conclude that that was really in the nature of background as opposed to the crime that was charged in the indictment? Well again, your honor, even in their brief to the court, they call it as part of the offense conduct. But again, it's part of the scheme to defraud. And I've cited to you the pages of the indictment that say that it is incorporated in each of the charged crimes, the government told the jury this is material. The injury to the funds caused by the fact that they were hoodwinked into giving their assets was material. And remember, even Judge Costell agrees that this is a but-for cause of the conspiracy. That without the assets that were essentially stolen from Stillwater, this could not have happened. The jury didn't have to make any findings with regard to that transaction for them to convict the individuals, did they? No, they did not, but- No, they didn't, because they weren't charged with it in the indictment. Yes, they were. In the indictment- No, they were not charged with it in the indictment. I've read the indictment. They were not charged, that was not part of the substantive conduct for which they went to jail. Yes, the answer to that is yes, I'm telling you in advance. I understand that that's- Okay, and an answer otherwise would not be right. But, Your Honor, it need not be. Be fanciful. It need not be, if that's how the court reads the indictment. It need not be? It need not be. In the Bengus case, for example, the offense conduct was importing illegal lobsters into the United States. South Africa, nonetheless, was entitled to restitution even though it was not part of the importation because it was injured by the over-harvesting in its waters, which was part of the offense. If you look at Villar, and if you look at the Villar case that we cite, if you look at the Archer case, when something, even if something is not part of the offense conduct itself, if it is the mechanism by which the fraud is achieved or the scheme is achieved, the victim of that is nonetheless entitled to restitution. And here there is no question that the seizure of the assets from the funds was fundamental to the conspiracy. Again, the government said that at the Hearst trial. They told the court when Mr. Hearst's counsel objected that this is 100% part of the conspiracy. The conspiracy, Your Honor, is the charged offense. They told the jury this is material. It was material to, Your Honor, the charged offense. And the court said, it is undisputed that without Jarova's acquisition of assets, the fraudulent scheme could never have come to fruition. The fact is, as Your Honor's heard yesterday and again today, these funds are out of at least $335 million and perhaps up to a half billion dollars of funds. And now we know Jarova had had wrongdoers, criminal wrongdoers who are coming forward with restitution. The Mandatory Victims Restitution Act provides that usually you will give restitution to make someone whole. These parties are anywhere but whole. And therefore, we believe the judge did abuse his discretion. Thank you very much for the time this morning. And we'll hear from the government. Good morning, Your Honors, and may it please the court. My name is Brian Blaze, and I'm an assistant United States attorney in the Southern District of New York. I represent the United States on appeal and also represented the government in the proceedings below. Judge Costell did not abuse his discretion in determining that Stillwater was not entitled to restitution. And he recognized that there are three fundamental problems with the argument that Stillwater advanced that they are entitled to restitution, one legal, one practical, one temporal. First, the legal problem, and I think Your Honor, Judge Wesley appropriately recognized it, which is that the indictment in this matter does not allege that there was fraud in the inducement that Stillwater was induced fraudulently to contribute their assets to Jarova. Instead, the indictment alleges a scheme by which the defendants in this matter profited by causing shares to be issued to a foreign nominee and for those shares to be sold through various mechanisms including inappropriate and illegal matched trading. Nor did the trial evidence establish that there was fraud in the inducement. Of course, there was mention of Stillwater at the trial and evidence about the formation of Jarova as necessary background to the conspiracy. But it was not a fundamental part of the scheme, the fraudulent scheme, which was the issuance of the shares and the disposition to the foreign nominee and the ultimate later disposition of those shares. So problem number one is the legal problem that I articulated, which is that the indictment does not encompass the fraud in the inducement or any fraud in the inducement with respect to the initial Jarova transfer. Two, the practical problem is that the Stillwater assets were not used to carry out the fraudulent scheme that was charged in the indictment. They were not the mechanism by which the defendants in this matter profited from the disposition of those shares. Of course, and Judge Costell recognized and the government didn't contest that the transfer of those Stillwater assets was a but-for cause. Of course, if Jarova didn't exist, the defendants would not have been able to later profit from the scheme. But the issue is whether Stillwater was proximately harmed by the criminal conduct. And we think that that answer is- My old job at the New York Court of Appeals, like a torts case. I mean, relevant to the creation of the entity, but not the mechanism by which the criminal conduct occurred. That's correct, Your Honor. That's the position we've taken below. That's the position that Judge Costell took. And we certainly believe that that was not an abuse of his discretion for him to so find. Why wasn't Stillwater a victim, really? I mean, it was part of the overall scheme that's been described. Without the transfer of Stillwater assets, there would have been no Jarova. As we were talking about a but-for cause, but still, it was essential, wasn't it? I want to distinguish on two types of harm, as Judge Costell did in his finding. Certainly, Stillwater, as every Jarova shareholder, was injured to the extent that their shareholdings in Jarova were diluted by the improper and illegal issuance of the 5.3 million shares to the foreign nominee. And Judge Costell had a separate finding with respect to those dilution losses that given it affected every Jarova shareholder, that it would be simply too, it would be too time consuming and complex to determine what the value of those dilution losses were. Second, is what we labeled the transfer losses. And we believe that Judge Costell appropriately found and did not abuse his discretion in so that he didn't impose any losses suffered from that for the reasons that I just articulated. Which is that the criminal conduct outlined in the indictment did not encompass a fraudulent transfer of the assets. Two, that it was not the mechanism through which the defendants in this case profited. And three, the third problem that I talked about was the temporal problem, and that is that there was a period of time. Yes, Judge Costell incorrectly found that it was two years. But in fact, it was four months, but nonetheless doesn't change the conclusion, which is that there was no evidence at the time that the Jarova transfer occurred, that the Stelwara assets were transferred. No evidence that the later scheme, the Shaheeni share issuance scheme, had been formulated or put into place. I see that my time has expired. Thank you, Your Honor. We'll hear from your colleague. Good morning, Your Honors. May it please the court. My name is Daniel Nutter. I represent Respondent Jason Galanis. Just wanted to briefly touch on a couple of points that hadn't been raised so far by the government. And the first is we've pointed, as Judge Wesley noted and the government noted, the transfer losses allegation raised by Stillwater was not the basis of what was charged in the indictment. It certainly was not anything that my client pled to. And it was not a basis of anything in the PSR or the findings in the sentencing. Stillwater tries to rely extensively on the Hearst trial. And as the court below found, and we agree with this, the Hearst trial also does not support Stillwater's findings. But we would argue that even if it did, it would be inappropriate to rely on any of this testimony in the Hearst trial, which my client had no opportunity, no full or fair opportunity to participate in. It would be essentially equivalent to an offensive use of non-mutual collateral estoppel in this situation. I think my client is required to be able to depend on the government's own statement, the court's own statement, of what the charges against him are. And that an unrelated third party cannot come in after the fact and essentially usurp the government's prosecutorial role to expand those charges. And they do have a remedy. If they feel that the government's prosecutorial prerogative is not meeting their needs, they can raise a tort action, which I believe they in fact have. Secondly, just to go to the dilution losses question. The MVRA makes it clear that it quote, shall not apply under, and this is section 3663A, C3, in either of a couple of scenarios. One of which being when there are complex issues of fact that would prolong the sentencing process. Here, not only did the district court not abuse its discretion in finding that for reasons that it addresses at length at page 12, in particular of its memo. But in trying to show otherwise, Stillwater is relying on about 300 pages of material that were not even presented to the district court. These are noted in a footnote in my response, footnote four identifies those 300 or so pages of materials. Including an audit, we have no real idea where the audit came from. But it was never part of the district court record in the first place. So it's difficult to see how the district court could have abused its discretion in not considering these materials. And secondly, I know I'm just about out of time, but when the court itself believes that it needs an expert witness, for example, to determine these complex issues, that the court's own determination that it wants expert assistance is something that Stillwater can come along and say, well, you don't need any expert assistance. You can just trust what we have to say about that. So unless the court has any specific questions for me at this point, I would just ask that you uphold the ruling of the district court. Thank you. Thank you. We'll reserve decision. The remaining motions are on submission.